IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT VANDERPLOEG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| vs. | ) | |
| | ) | Case No. |
| CENTER REALTY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## **COMPLAINT**

COMES NOW, ROBERT VANDERPLOEG, by and through the undersigned counsel, and files this, his Complaint against Defendant, CENTER REALTY, INC., pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG").   In support thereof, Plaintiff respectfully shows this Court as follows:

## **JURISDICTION**

1.      This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq.*, based upon Defendant's failure to remove physical barriers to access and violations of Title III of the ADA.

## **PARTIES**

2.      Plaintiff, ROBERT VANDERPLOEG (hereinafter "Plaintiff") is, and has been at all times relevant to the instant matter, a natural person residing in Houston, Texas (Harris County).

3.      Plaintiff is disabled as defined by the ADA.

1

4.      Plaintiff is required to traverse in a wheelchair and is substantially limited in performing one or more major life activities, including but not limited to: walking and standing.

5.      Plaintiff uses a wheelchair for mobility purposes.

6.      Plaintiff is also an independent advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA. His motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to create the requisite standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property, including returning to the Property within six months after it is accessible ("Advocacy Purposes").

7.      Defendant, CENTER REALTY, INC. (hereinafter "CENTER REALTY, INC."), is a Texas company that transacts business in the State of Texas and within this judicial district.

8.      Defendant, CENTER REALTY, INC., may be properly served with process for service via its registered agent, to wit:  c/o Trung Pham, Registered Agent, 13119 Veterans Memorial Parkway, Houston, TX  77014.

**FACTUAL ALLEGATIONS**

9.      On or about January 28, 2021, Plaintiff was a customer at "Almeda Food Mart" a business located at 10722 Kingspoint Road, Houston, TX  77075, referenced herein as "Almeda Food Mart". Attached is a receipt documenting Plaintiff's purchase. *See* Exhibit 1. Also attached is a photograph documenting Plaintiff's visit to the Property. *See* Exhibit 2.

10.     Plaintiff lives 10 miles from the Property.

11.     **PRESUIT NOTICE:** On April 7, 2021, Plaintiff mailed via certified mail/return receipt requested a pre-suit notice of the violations and his intent to file this lawsuit if a settlement could not be reached to resolve the claim prior to filing this Complaint.  *See* Pre-suit Letter attached as Exhibit 3.

12.     Defendant CENTER REALTY, INC., is the owner or co-owner of the real property and improvements that Almeda Food Mart is situated upon and that is the subject of this action, referenced herein as the "Property."

13.     Plaintiff's access to the business(es) located 10722 Kingspoint Road, Houston, TX   77075, Harris County Property Appraiser's account number 0461620000011 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of his disabilities, and he will be denied and/or limited in the future unless and until Defendant, CENTER REALTY, INC., is compelled to remove the physical barriers to access and correct the ADA violations that exist at the Property, including those set forth in this Complaint.

14.     Defendant, CENTER REALTY, INC., as property owner, is responsible for complying with the ADA for both the exterior portions and interior portions of the Property. Even if there is a lease between Defendant, CENTER REALTY, INC., and the tenant allocating responsibilities for ADA compliance within the unit the tenant operates, that lease is only between the property owner and the tenant and does not abrogate the Defendant's requirement to comply with the ADA for the entire Property it owns, including the interior portions of the Property which are public accommodations.  *See* 28 CFR § 36.201(b).

15.     Plaintiff has visited the Property at least once before as a customer and advocate for the disabled.  Plaintiff intends on revisiting the Property within six months after the barriers

3

to access detailed in this Complaint are removed and the Property is accessible again.  The purpose of the revisit is to be a return customer, to determine if and when the Property is made accessible and to maintain standing for this lawsuit for Advocacy Purposes.

16.    Plaintiff intends on revisiting the Property to purchase goods and/or services as a return customer living in the near vicinity as well as for Advocacy Purposes, but does not intend to re-expose himself to the ongoing barriers to access and engage in a futile gesture of visiting the public accommodation known to Plaintiff to have numerous and continuing barriers to access.

17.    Plaintiff travelled to the Property as a customer and as an independent advocate for the disabled, encountered the barriers to access the Property that are detailed in this Complaint, engaged those barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access present at the Property.

## COUNT I
## VIOLATIONS OF THE ADA AND ADAAG

18.    On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq.*

19.    Congress found, among other things, that:

(i)     some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii)    historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii)   discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv)     individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v)      the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

20.     Congress explicitly stated that the purpose of the ADA was to:

(i)      provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii)     provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

         * * * * *

(iv)     invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

21.      The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

22.     The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

23.     The Property is a public accommodation and service establishment.

24.     Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

25.     Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181 *et seq.*; 28 C.F.R. § 36.508(a).

26.     The Property must be, but is not, in compliance with the ADA and ADAAG.

27.     The Property is comprised of multiple buildings served by a single parking lot. All of the buildings on the Property are public accommodations.

28.     Plaintiff has attempted to, and has to the extent possible, accessed the Property in his capacity as a customer at the Property as well as an independent advocate for the disabled, but could not fully do so because of his disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

29.     Plaintiff intends to visit the Property again in the very near future as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at the Property, but will be unable to fully do so because of his disability and the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more

specifically set forth in this Complaint.

30.    Defendant, CENTER REALTY, INC., has discriminated against Plaintiff (and others with disabilities) by denying his access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. § 12182(b)(2)(A)(iv).

31.    Defendant, CENTER REALTY, INC., will continue to discriminate against Plaintiff and others with disabilities unless and until Defendant, CENTER REALTY, INC., is compelled to remove all physical barriers that exist at the Property, including those specifically set forth herein, and make the Property accessible to and usable by Plaintiff and other persons with disabilities.

32.    A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed, or was made aware of prior to the filing of this Complaint, that precluded and/or limited Plaintiff's access to the Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS:**

(i)    There is a policy of placing parking stops in the access aisles at the Property which improperly encourages parking in the access aisle.  Specifically, there is a parking stop located in the access aisle of the accessible parking space between the Daihoa Market and the iCafe, which improperly encourages parking in the access aisle in violation of Section 502.3.3 of the 2010 ADAAG standards.  This

violation would make it difficult for Plaintiff to leave a vehicle when parked in this accessible parking space.

(ii)     Between the Daihoa Market and the iCafe, due an inadequate policy of maintenance resulting in a faded sign that is difficult to read, the existing accessible parking space sign is in violation of Section 502.6 of the 2010 ADAAG standards as it does not adequately identify the parking space as accessible. This violation would make it difficult for Plaintiff to locate an accessible parking space.

(iii)    The second accessible parking space located in between the Daihoa Market and the iCafe lacks a sign identifying the parking space as accessible in violation of Section 502.6 of the 2010 ADAAG Standards.  This violation would make it difficult for Plaintiff to locate an accessible parking space.

(iv)     Between the Daihoa Market and the iCafe, of the two accessible parking spaces present, the northern accessible parking spaces is not located on the shortest distance to the accessible route leading to the accessible entrances in violation of Section 208.3.1 of the 2010 ADAAG Standards as there is not a ramp aligned with the access aisle and the nearest accessible ramp is not on an accessible route due to the violations detailed in (e) below. This violation would make it difficult for Plaintiff to access the units of the Property.

(v)      On the accessible route leading from the two accessible parking spaces located between between the Daihoa Market and the iCafe, the ground surfaces of the accessible route have vertical rises in excess of ¼ (one quarter) inch in height, are not stable or slip resistant, have broken or unstable surfaces or otherwise fail to

comply with Sections 302 and 303 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to access the units of the Property.

(vi)     Near Unit 10708, the access aisle to the accessible parking space is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(vii)    Near Unit 10708, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking space in violation of Section 406.5 of the 2010 ADAAG Standards.  This violation would make it difficult and dangerous for Plaintiff to exit/enter their vehicle.

(viii)   Near Unit 10708, the accessible parking space is missing an identification sign in violation of Section 502.6 of the 2010 ADAAG standards. This violation would make it difficult for Plaintiff to locate an accessible parking space.

(ix)     In violation of Section 208.2 of the 2010 ADAAG Standards and 502.3, there are multiple signs in front of the access aisle of this accessible parking space which states "DAI HOA MKT CUSTOMERS ONLY" and threaten towing if a person is not customer and parked at this accessible parking space.  These signs encourage individuals who are customers of the Dai Hoa Market to park in the access aisle. Moreover, these signs discourage non Dai Hoa Market customers who may be disabled to not utilize this accessible parking space by threatening to tow away any non Dai Hoa Market customers.  Accessible parking spaces must be available

to customers of all the stores of the Property otherwise it does not qualify as an accessible parking space for purposes of complying with the required number set forth in Section 208.2 of the 2010 ADAAG Standards.

(x)     There is an approximately 1 1/2 inch vertical rise at the entrance to Unit 10708 in violation of Section 404.2.5 of the 2010 ADAAG Standards, thus rendering the interior of the Property inaccessible at his unit. This violation would make it dangerous and difficult for Plaintiff to access the units of the Property.

(xi)    At Unit 10708, the maneuvering clearance of the accessible entrance is not level in violation of Section 404.2.4.4 of the 2010 ADAAG standards. This violation would make it difficult for Plaintiff to access the units of the Property.

(xii)   There is not at least one accessible entrance to each tenant space in the building that complies with Section 404 of the 2010 ADAAG standards which is a violation of Section 206.4.5 of the 2010 ADAAG Standards.

(xiii)  At Unit 10718, there is a doorway threshold with a vertical rise in excess of  one inch and does not contain a bevel with a maximum slope of 1:2 in violation of Section 404.2.5 of the 2010 ADAAG standards.

(xiv)   In front of the Alameda Food Mart, the maneuvering clearance of the accessible entrance is not level in violation of Section 404.2.4.4 of the 2010 ADAAG standards.

(xv)    As a result of the violations detailed in (j-n) above, not all entrance doors and doorways comply with Section 404 of the 2010 ADAAG standards, this is a violation of Section 206.4 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to access the interior of the Property.

(xvi)  In front of Unit 10720B, the accessible parking space is missing an identification sign in violation of Section 502.6 of the 2010 ADAAG standards. This violation would make it difficult for Plaintiff to locate an accessible parking space.

(xvii)  In front of Unit 10720B, the access aisle serving the accessible parking space has a width that decreases below 60 inches and is therefore in violation of Section 502.3.1 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(xviii)  In front of Unit 10720B, the access aisle to the accessible parking space is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(xix)  In front of Unit 10720B, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking space in violation of Section 406.5 of the 2010 ADAAG Standards.  This violation would make it difficult and dangerous for Plaintiff to exit/enter their vehicle.

(xx)  In front of Unit 10720B, the accessible parking space is not level due to the presence of an accessible ramp in the accessible parking space in violation of Section 502.4 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

11

(xxi)    In front of Unit 10720B, the accessible curb ramp is improperly protruding into the accessible parking space in violation of Section 406.5 of the 2010 ADAAG Standards.  This violation would make it difficult and dangerous for Plaintiff to exit/enter their vehicle.

(xxii)    In front of Unit 10720B, there is a vertical rise of an inch and a half at the base of the accessible ramp, in violation of Sections 303.2 and 405.4 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to access public features of the Property.

(xxiii)    In front of Unit 10720B, the Property has an accessible ramp that lacks finished edges or edge protection and/or is otherwise in violation of Section 405.9 of the 2010 ADAAG standards. This violation would make it difficult for Plaintiff to access the units of the Property.

(xxiv)    In front of Unit 10720B, due to the excessive vertical rise in the nearby accessible ramp, the Property lacks an accessible route from accessible parking space to the accessible entrance of the Property in violation of Section 208.3.1 of the 2010 ADAAG standards. This violation would make it difficult for Plaintiff to access the units of the Property.

(xxv)    Adjacent to the Alameda Food Mart, due to the presence of security shutters that extend outward into the exterior accessible route, the clear width of the exterior accessible route connecting the units of the Property decreases well below the minimum 36 (thirty-six) inch requirement as required by Section 403.5.1 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to access exterior public features of the Property.

(xxvi)  As a result of the violation detailed in (y) above, the Property lacks an accessible route connecting accessible facilities, accessible elements and/or accessible spaces of the Property in violation of Section 206.2.2 of the 2010 ADAAG standards. This violation would make it difficult for Plaintiff to access public features of the Property.

(xxvii) There are an insufficient number of accessible parking spaces at the Property in violation of Section 208.2 of the 2010 ADAAG Standards.  There are a total of 112 marked parking spaces on the Property which require a minimum of five accessible parking spaces, but there are only four accessible parking spaces on the Property.  Of those four, one of which has signs threatening towing if you are not a customer of a specific unit, leaving only three accessible parking spaces freely available for members of the public to utilize.

(xxviii) There are no accessible parking spaces identified as "van accessible" in violation of Sections 208.2.4  and 502.6 of the 2010 ADAAG standards.

33.     The violations enumerated above may not be a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Property.

34.     Plaintiff requires an inspection of the Property in order to determine all of the discriminatory conditions present at the Property in violation of the ADA.

35.     The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

36.      All of the violations alleged herein are readily achievable to modify to the Property into compliance with the ADA.

37.     Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because the nature and cost of the modifications are relatively low.

38.     Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because Defendant, CENTER REALTY, INC., has the financial resources to make the necessary modifications.  According to the Property Appraiser, the Appraised value of the Property is $815,586.00.

39.     The removal of the physical barriers and dangerous conditions present at the Property is also readily achievable because Defendant has available to it a $5,000.00 tax credit and up to a $15,000.00 tax deduction from the IRS for spending money on accessibility modifications.

40.     Upon information and good faith belief, the Property has been altered since 2010.

41.     In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and all of the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

42.     Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendant, CENTER REALTY, INC., is required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Property, including those alleged herein.

43.     Plaintiff's requested relief serves the public interest.

44.     The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendant, CENTER REALTY, INC.

45.     Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of

14

litigation from Defendant, CENTER REALTY, INC., pursuant to 42 U.S.C. §§ 12188 and 12205.

46.     Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendant, CENTER REALTY, INC., to modify the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a)     That the Court find Defendant, CENTER REALTY, INC., in violation of the ADA and ADAAG;

(b)     That the Court issue a permanent injunction enjoining Defendant, CENTER REALTY, INC., from continuing their discriminatory practices;

(c)     That the Court issue an Order requiring Defendant, CENTER REALTY, INC., to (i) remove the physical barriers to access and (ii) alter the Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

(d)     That the Court award Plaintiff his reasonable attorneys' fees, litigation expenses and costs; and

(e)     That the Court grant such further relief as deemed just and equitable in light of the

circumstances.

Dated: April 29, 2021.

Respectfully submitted,

/s/ Douglas S. Schapiro
Douglas S. Schapiro, Esq.
Southern District of Texas ID No. 3182479
The Schapiro Law Group, P.L
7301-A W. Palmetto Park Rd., #100A
Boca Raton, FL 33433
Tel: (561) 807-7388
Email: schapiro@schapirolawgroup.com